**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WC TEAKWOOD PLAZA, LLC,[1] | Case No. 20-11104-tmd |
| Debtor. | |
| WC TEAKWOOD PLAZA, LLC, | Adv. Pro. No. 20-01061-tmd |
| Plaintiff, | |
| v. | |
| 8201 BURNET, LP, HARDEMAN FAMILY JOINT VENTURE LTD., HFJV GP, LLC, DORSEY BRYAN HARDEMAN, WILLIAM HARDEMAN, JUSTIN BAYNE and MARK RILEY, | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

Plaintiff WC Teakwood Plaza, LLC ("WC Teakwood"), by its undersigned counsel, Fishman Jackson Ronquillo PLLC, as its First Amended Complaint against Defendants 8201 Burnet, LP ("Anonymous Teakwood Lender"), Hardeman Family Joint Venture, Ltd. (the "Hardeman Family JV"), HFJV GP, LLC (the "Hardeman Family GP"), Dorsey Bryan Hardeman ("Hardeman"), William Hardeman ("William," and together, with Hardeman, the Hardeman Family JV, the Hardeman Family GP, the "Hardeman Family Defendants"), Justin Bayne ("Bayne") and Mark Riley ("Riley") hereby allege as follows:

---

[1] The Debtor in this Chapter 11 case and the last four numbers of its federal tax identification number is WC Teakwood Plaza, LLC (0420).

1

## NATURE OF THIS ACTION

1.      This action arises out of an evolving, complex, fraudulent and predatory lending scheme orchestrated by Hardeman Family Defendants with the substantial assistance of the Anonymous Teakwood Lender and other Anonymous Lenders (defined below) , Bayne, and Riley (collectively, with the Anonymous Lenders Group, the "Hardeman Co-Conspirators"), to defraud WC Teakwood, three affiliated debtors in bankruptcy proceedings currently pending before this Court, WC 4811 South Congress, LLC ("WC 4811"), WC 4th and Colorado, LP ("WC Colorado") and WC Custer Creek Center Property, LLC ("WC Custer," and collectively, with WC Teakwood, WC 4811 and WC Colorado, the "WC Debtors") and four of their non-debtor affiliates (the "WC Non-Debtors") out of their substantial equity in eight valuable real properties in Austin, San Antonio and Plano, Texas (the "Targeted Portfolio") for the benefit of the Hardeman Family Defendants, to intentionally interfere with the WC Non-Debtors efforts to pay off their mortgage debt, and to intentionally interfere with the WC Debtors' ability to reorganize in the proceedings.

2.      The Targeted Portfolio is valued at approximately $200 million.  By contrast, the mortgage debt encumbering the Targeted Portfolio that was purchased by Anonymous Teakwood Lender and seven of its affiliated "anonymous" lender entities (collectively, the "Anonymous Lenders") at the behest of the Hardeman Family Defendants amounts to approximately $43 million.  The WC Debtors and the WC Non-Debtors therefore have more than $150 million in equity in the Targeted Portfolio over the balances of Anonymous Lenders' loans.

3.      In early 2020, Hardeman, Bayne and Riley began contacting the mortgage lenders to the WC Debtors, the WC Non-Debtors and their affiliates, falsely claiming they were in dire straits and on the brink of financial ruin, intending to create confusion, concern and antagonism among the WC Debtors and the WC Non-Debtors' lending relationships, to pressure the

predecessor lenders to sell their loans to the Anonymous Lenders to avoid imminent risk of loss.

4.     As to the four mortgage lenders whose loans were secured by the Targeted Portfolio, Hardeman, Bayne and Riley's fraudulent efforts were ultimately successful. Thereafter, between mid-April and early September 2020, they executed their scheme by forming the Anonymous Lenders, shell entities with multiple layers of anonymous ownership, having no discernible connection to the Hardeman Family Defendants but that, upon information and belief, are ultimately owned and/or controlled by them or their affiliates, in order to acquire the Targeted Portfolio. Through Riley, Bayne and counsel to the Anonymous Lenders, Bracewell LLP ("Bracewell"), the Anonymous Lenders went to great lengths to attempt to conceal the identities of their principals from the WC Debtors and obfuscate the Hardeman Family Defendants' and Hardeman Co-Conspirators' intentions with regard to the Targeted Portfolio.

5.     Upon information and belief, Riley, Bayne, and Hardeman interfered with the WC Debtors and WC Non-Debtors' existing contractual relationships with their predecessor lenders by using false information to induce them to sell their loans, and allowed the Anonymous Lenders to purchase those loans, after which the Anonymous Lenders immediately exercised their remedies in furtherance of their scheme to foreclose on the Targeted Portfolio through rigged non-judicial foreclosure sales.

6.     Riley, Bayne and Hardeman's original scheme involved conducting sham foreclosure auctions on the courthouse steps and discouraging arm's length bidders from making competing offers, facilitating the Anonymous Lenders' acquisition of the Targeted Portfolio via "credit bidding." To deter interested parties from bidding on the Targeted Portfolio, Riley or his agents intended to speak with those parties in advance of the auction and to ask them not to bid in exchange for an opportunity to buy the properties from the Anonymous Lenders after the

Anonymous Lenders took ownership. Hardeman, Bayne and Riley's plan assured a "win-win" for the Anonymous Lenders and the bidders, at the expense of the WC Debtors' equity, as the Anonymous Lenders would either own the Targeted Portfolio or sell them to a bidder and keep the sale proceeds above the debt for themselves, rather than distributing the proceeds above the debt to the WC Debtors and the WC Non-Debtors.

7.     Immediately after purchasing the WC Debtors' mortgages, Riley, Bayne and the Anonymous Lenders began acting as the owners of the Targeted Portfolio. By way of example, Riley and Bayne interfered with the WC Debtors and the WC Non-Debtors' leases by communicating directly with the tenants of the properties at in-person meetings, via email and even by Facebook message regarding issues such as lease terms, COVID-19 related rent accommodations and the WC Debtors' operations. Further, Riley, Bane and the Anonymous Lenders also began contacting property-level vendors, instructing them to communicate with Riley rather than the personnel designated by the WC Debtors/WC Non-Debtors for such purposes and attempting to arrange for work to be completed at the properties without any notice, coordination or communication with the WC Debtors/WC Non-Debtors. Incredibly, Riley went as far as to contact city agencies about the properties directly. Riley, Bayne and Anonymous Lenders' interference with the WC Debtors' tenant leases and property-level vendor contracts caused significant confusion among tenants, vendors and others, resulting in damage to the WC Debtors, including the non-payment and/or withholding of tenant rents.

8.     While Riley and Bayne were hard at work interfering with the WC Debtors' operations in an attempt to wrongfully exercise control over the Targeted Portfolio and create market confusion, Hardeman was busy creating fear and chaos among brokers and financing sources by spreading false information and by encouraging a real estate broker to market one of

the WC Debtors' properties for sale without authorization by falsely claiming that Hardeman was the owner of the property.

9.      Riley also advanced false narratives through statements to the media, attempting to cloud the business and affairs of the WC Debtors and their principal. For example, in a November 6, 2020 article in the Houston Chronicle, Riley made inappropriate and disparaging comments about one of the WC Debtors and its principal, characterizing bidders at a non-judicial foreclosure sale were "a traveling circus and a freak show . . . people that look like they got paid $25 and a sandwich to come to hang out."[2] Most egregiously, Riley readily admitted that he attempted discourage and intimidate potential bidders, boasting to the press that he had "ask[ed] bidders to fill out a form assessing their qualifications to buy before entering the auction area."[3] Riley's statements to the press mirror the actions that Hardeman indicated to the market that the Anonymous Lenders would take to chill the foreclosure auction bidding.

10.     After the WC Debtors filed for Chapter 11 protection, however, the Hardeman Co-Conspirators were forced to adjust their strategy to divest the WC Debtors of their equity in the Targeted Portfolio.  They began to project a narrative to the marketplace that not only will any bankruptcy sale of the four properties owned by the WC Debtors (the "Targeted Debtor Properties") will be hopelessly rigged in favor of the Anonymous Lenders through an insider receivership appointment, ***but they allege that this Court is aware of and on board with the scheme***.

11.     This, of course, has dramatically chilled the market for the Targeted Portfolio, as

---

[2]      Goldenstein, Taylor, *Court records depict how investor Nate Paul wielded AG Ken Paxton legal opinion*, Houston Chronicle, Nov. 6, 2020 available at https://www.houstonchronicle.com/politics/texas/article/Court-records-depict-how-investor-Nate-Paul-15708918.php (last visited Nov. 23, 2020).

[3]      *Id.*

real estate owners, developers and investors are highly unlikely to expend the considerable time and resources necessary to formulate a proper bid for a multi-million-dollar real estate asset only to have it rejected in favor of a credit bid by an insider secured lender.

12.     In furtherance of their conspiracy, the Hardeman Co-Conspirators have disparaged the WC Debtors and their principal in the marketplace, to dissuade lenders, investors, and prospective purchasers from offering the WC Debtors alternative financing or any opportunity to reorganize of any of the Targeted Properties.

13.     Incredibly, Hardeman has even resorted to overt threats and harassment of a high-ranking government official, to discourage him from investigating Hardeman and his affiliates' efforts to defraud the owners of the Targeted Portfolio.  On the evening of October 11, 2020, Hardeman sent a text message to Attorney General Ken Paxton with a picture of a dead animal that had recently been shot, accompanied by the text message "stay the hell away from Nate Paul."

14.     Accordingly, by this Amended Complaint, WC Teakwood asserts claims against Anonymous Teakwood Lender, the Hardeman Family Defendants, Bayne and Riley for: (a) civil conspiracy; (b) tortious interference with prospective contractual relations; (c) business disparagement/defamation *per se*; and (d) equitable subordination pursuant to 11 U.S.C. § 510(c).

## THE PARTIES

15.     Plaintiff WC Teakwood is a Delaware limited liability company authorized to do business in Texas, having a principal place of business at 814 Lavaca Street, Austin, Texas. WC Teakwood is the Debtor-in-Possession in the above-captioned bankruptcy proceeding.

16.     Defendant Anonymous Teakwood Lender is a recently formed Delaware limited partnership newly authorized to do business in Texas, having a principal place of business at 500 W. 2nd Street, Suite 1900, Austin, Texas.  On August 21, 2020, Anonymous Teakwood Lender

acquired the mortgage loan (the "Teakwood Loan") encumbering WC Teakwood's valuable real property located at 8201 Burnet Road, Austin, Texas (the "Teakwood Property").

17.     Defendant Hardeman Family JV is a Texas limited partnership having a principal place of business at 6757 Airport Boulevard, Austin, Texas.  Upon information and belief, the Hardeman Family JV provided funding to some or all of the Anonymous Lender Defendants for the purchase of the mortgage debt securing the Targeted Portfolio.  Upon information and belief, Hardeman Family GP is the general partner of the Hardeman Family JV and its limited partners and co-member-managers are Hardeman's three children, non-parties William Bryan Hardeman, Joy Hardeman and Jennifer Hardeman.

18.     Defendant Hardeman Family GP is a Texas limited liability company having a principal place of business at 6757 Airport Boulevard, Austin, Texas.  Upon information and belief, Bryan Hardeman and William Hardeman are managers of Hardeman Family GP, the general partner of the Hardeman Family JV.

19.     Defendant Bryan Hardeman is a natural person residing in Austin, Texas.  Upon information and belief, by virtue of his position as a co- member-manager of the Hardeman Family GP, Hardeman controls the Hardeman Family JV.  Therefore, upon information and belief, by virtue of the Hardeman Family JV's 100% ownership interest in some or all of the Anonymous Lender Defendants and by his own admission under oath, Hardeman controls the Anonymous Lender Defendants, including Anonymous Teakwood Lender.

20.     Defendant William Hardeman is a natural person residing in Austin, Texas.  Upon information and belief, by virtue of his position as a co- member-manager of the Hardeman Family GP, Hardeman controls the Hardeman Family JV.  Therefore, upon information and belief, by virtue of the Hardeman Family JV's 100% ownership interest in in some or all of the Anonymous

Lender Defendants and by Bryan Hardeman's admissions under oath, Hardeman controls the Anonymous Lender Defendants, including Anonymous Teakwood Lender.

21.     Defendant Bayne is a natural person residing in Austin, Texas.  Upon information and belief, Bayne is President and a managing partner or a managing member of each of the Anonymous Lender Defendants, including Anonymous Teakwood Lender.

22.     Defendant Riley is a natural person residing in Houston, Texas.  Upon information and belief, Riley serves as general counsel and substitute trustee responsible for foreclosure sales for each of the Anonymous Lender Defendants.  He is also the uncle of Defendant Bayne.

## JURISDICTION AND VENUE

23.     This Court has original subject-matter jurisdiction over this action under 28 U.S.C. §§ 1334(b) and 157 because: (a) WC Teakwood's Fourth Claim is a "core proceeding" under 28 U.S.C. § 157 (b)(2)(B); and (b) WC Teakwood's First through Third Claims are "related to" its bankruptcy proceeding in that, among other things, (a) the allegations herein involve a civil conspiracy among the Hardeman Co-Conspirators undertaken for the purpose of interfering with the business and affairs of WC Teakwood and gaining an unfair advantage in the bankruptcy proceeding and WC Teakwood's efforts to reorganize; and (b) a judgment in WC Teakwood's favor in this action may affect its rights and obligations in the bankruptcy proceedings.  This action therefore contains both core and non-core matters. Pursuant to Rule 7008(a) of the Federal Rules of Bankruptcy Procedure, WC Teakwood consents to entry of a final order or judgment by this Court as to its First through Third Claims.

24.     This Court has personal jurisdiction over the Hardeman Co-Conspirators under Rule 7004 of the Federal Rules of Bankruptcy Procedure and Rule 4 of the Federal Rules of Civil Procedure because the Hardeman Co-Conspirators are residents of Texas and/or are registered to

5565876.3

do business in Texas and/or they committed one or more tortious acts in Texas.  Further, certain of WC Teakwood's claims herein were previously asserted in an action entitled *WC Teakwood Plaza, LLC, et al v. 8201 Burnet, LP, et al.*, Cause No. D-1-GN-20-004508 (the "Teakwood State Court Action") originally filed by WC Teakwood in the 261st Judicial District Court of Travis County.  By Notice of Removal dated October 9, 2020, Anonymous Teakwood Lender removed the Teakwood State Court Action to this Court.  *See* Adv. Pro. Dkt. No. 1..

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1408(b) because this action is related to WC Teakwood's bankruptcy proceeding pending before this Court.

### FACTS COMMON TO ALL CLAIMS

A.     **Anonymous Lender Defendants Acquire the Mortgage Loans Encumbering the Targeted Debtor Properties**

     *i.     **Anonymous Colorado Lender Acquires the Colorado Loan***

26.     The Colorado Property is located on the corner of 4th and Colorado Streets in the heart of Austin's Warehouse District.  It is a prime destination during Austin's many festivals and events, including the Formula One Grand Prix, SXSW and Austin City Limits, featuring high-end restaurants Capital Grille, RA Sushi and The Market & Tap Room.

27.     The Colorado Property was originally encumbered by a mortgage loan from Independent Bank ("Independent") in the principal amount of $8,000,000 million (the "Colorado Loan").

28.     Upon information and belief, in the early Spring of 2020, Hardeman, Bayne and Riley approached Independent about selling the Colorado Loan to the Anonymous Lender Defendants.  Upon information and belief, to induce Independent to agree to their proposal, Hardeman, Bayne and Riley falsely claimed that WC Colorado was in severe financial distress. This narrative, of course, had no basis in realty, as none of them had any relationship with WC

Colorado or insight into its business or affairs.

29.     Nevertheless, Hardeman, Bayne and Riley's efforts were ultimately successful, and Independent agreed to sell the Colorado Loan.  Thereafter, Hardeman, Bayne and Riley conspired to form Anonymous Colorado Lender, an entity having no discernible connection to the Hardeman Family Defendants but that, upon information and belief, is ultimately owned and/or controlled by them or their affiliates, in order to ultimately acquire the Colorado Property.

30.     On May 1, 2020, Anonymous Colorado Lender acquired the Colorado Loan.

31.     Upon information and belief, Hardeman, Bayne and Riley purposefully structured Anonymous Colorado Lender with layers of shell entity ownership in order to conceal the Hardeman Family Defendants' connection to Anonymous Colorado Lender from WC Colorado. Indeed, this Court is all too familiar with the lengths to which he Anonymous Lenders will go to prevent the WC Debtors from learning the identities of their new lenders.  *See, e.g., In re WC 4th and Colorado, LP*, Case No. 20-10-811-tmd, Dkt. No. 22.

32.     In fact, prior to WC Colorado's chapter 11 filing, Anonymous Colorado Lender went as far as to file a lawsuit against WC Colorado in the 261st Judicial District Court of Travis County seeking a declaratory judgment that Anonymous Colorado Lender could exercise its remedies under the Colorado loan documents without disclosing the identities of its principals or the underlying transactional documents by which it acquired the Colorado Loan.

33.     Anonymous Colorado Lender also sought the appointment of a specific receiver – Gregory Milligan ("Milligan") – to assume control over Colorado Property pending foreclosure[4]. However, the Colorado Debtor had filed for Chapter 11 protection so Anonymous Colorado

---

[4]      At the time of Colorado Lender's application for receiver Milligan, Milligan was involved in state court proceedings for affiliates of WC Teakwood, and in which he is represented by Stephen Lemmon and Rhonda Mates of Streusand, Landon, Ozburn & Lemmon, LLP. This disclosure was not made by Milligan or Anonymous Colorado Lender.

Lender's receiver motion was not heard.

      ii.     ***Anonymous 4811 Lender and Anonymous***
           ***Teakwood Lender Acquire the 4811 and Teakwood Loans***

34.     The 4811 Property consists of a 14.9-acre mixed-use development site located in Austin's South Congress neighborhood that is currently improved with five mixed-use buildings and a small mobile home community.  It was originally encumbered by a mortgage loan from Bancorpsouth Bank ("Bancorp") in the principal amount of $4,745,000 (the "4811 Loan").

35.     The Teakwood Property consists of a 48,440 square-foot shopping center located at the intersection of Burnet Road and Steck Avenue in North Central Austin.  It was originally encumbered by a mortgage loan from Bancorp in the principal amount of $7,600,000 (the "Teakwood Loan").

36.     Upon information and belief, in the Spring of 2020, Hardeman, Bayne and Riley approached Bancorp regarding a potential sale of the 4811 and Teakwood Loans.  Similar to their strategy to acquire the Colorado Loan, Hardeman, Bayne and Riley advanced false narratives about WC 4811 and WC Teakwood's purportedly dire financial condition to create fear and confusion with Bancorp and to induce it to sell the 4811 and Teakwood Loans.

37.     Bancorp ultimately relented agreed to sell the 4811 and Teakwood Loans. Hardeman, Bayne and Riley thereafter formed Anonymous 4811 Lender and Anonymous Teakwood Lender, entities having no discernible connection to the Hardeman Family Defendants but that, upon information and belief, are ultimately owned and/or controlled by them or their affiliates, in order to acquire the 4811 and Teakwood Loans.

38.     Upon information and belief, Hardeman, Bayne and Riley purposefully structured Anonymous 4811 Lender and Anonymous Teakwood Lender with layers of shell entity ownership in order to conceal the Hardeman Family Defendants' interest in and/or control over them from

WC 4811 and WC Teakwood.

39.     This is consistent with Hardeman's evasive testimony at his Rule 2004 examination during which he both denied he had any interest in Anonymous 4811 Lender or the 4811 Loan but conceded both that he is a control person for the Hardeman Family JV, which owns 100% of the membership interests in Anonymous 4811 Lender and that he instructed the tenants at the 4811 Property to remit rental payments to his office going forward:

> Q.  And do you have any type of ownership interest in 4811?
> A.  No.[5]
>
> *        *        *
>
> Q.  And were you interested in buying this yourself or for a group or how were you . . .
> A.  Well, I've already stated, I don't own any part of it.[6]
>
> *        *        *
>
> Q.  Who bought the note?
> A.  Well, the Hardeman family partnership did.
> Q.· So who is 4811 SOCO, LP, that's S-O-C-O – 4811 S-O-C-O, LP?[7]
> A.· Well, that's who bought the 4811 loan from BancorpSouth.
> Q.··But didn't you just tell me the Hardeman family partnership did?
> A. ·That's correct.· That's who owns the note that -- well, 4811 -- what did you say, SOCO?
> Q.··Yes, sir.
> A.· That's who bought the note from BancorpSouth.[8]
>
> *        *        *
>
> Q.··So Hardeman Family JV, Limited, owns all of the interests that is outstanding for 4811 SOCO Limited Partnership?
> A.· Correct.[9]
>
> *        *        *
>
> A.  I guess, you – first you write them a registered letter saying send your rent here.
> Q.· And where would "here" be?

---

[5]     *See In re: WC 4811 South Congress, LLC*, Case No. 20-11105-tmd, Dkt. No. 17-7, 8:25-9:2.

[6]     *Id.*, at 11:14-17.

[7]     *Id.*, at 23:16-24.

[8]     *See In re: WC 4811 South Congress, LLC*, Case No. 20-11105-tmd, Dkt. No. 17-7, 23:16-25.

[9]     *Id.*, at 24:11-16.

5565876.3

A.· Well, probably my office.[10]

### iii. *Anonymous Custer Lender Acquires the Custer Loan*

40.    The Custer Property consists of a 78,705 square foot neighborhood retail shopping center located at the southeast corner of Spring Creek Parkway and Custer Road in the heart of Plano, Texas.  The center is anchored by a local grocery store and features a Walgreens and several popular restaurants.

41.    The Custer Property was originally encumbered by a mortgage loan from Amplify Credit Union ("Amplify") in the principal amount of $6,540,000 (the "Custer Loan").

42.    Upon information and belief, in the early Spring of 2020, Hardeman, Bayne and Riley approached Amplify to sell the Custer Loan along with two mortgage loans encumbering properties owned by the WC Non-Debtors.  Upon information and belief, to induce Amplify to agree to a sale, Hardeman, Bayne and Riley characterized WC Custer and the two WC Non-Debtors as on the brink of financial ruin to breed antagonism and confusion in WC Custer's lending relationship with Amplify to encourage it sell the three mortgage loans.

43.    Hardeman, Bayne and Riley ultimately persuaded Amplify to sell the three mortgage loans, including the Custer Loan[11].  Thereafter, Hardeman, Bayne and Riley formed Anonymous Custer Lender and two other "anonymous" lender affiliates, entities having no discernible connection to the Hardeman Family Defendants but that, upon information and belief, are ultimately owned and/or controlled by them or their affiliates, in order to acquire the three loans.

44.    On September 9, 2020, Anonymous Custer Lender acquired the Custer Loan.

---

[10]    *Id.*, at 56:6-10.

[11]    Amplify was represented by Streusand, Landon, Ozburn & Lemmon, LLP at the time of the loan sale, the same firm representing Milligan.

A.    **Anonymous Teakwood Lender Insists on Proceeding with a Prohibited Non-Judicial Foreclosure Sale of the Teakwood Property in Violation of Government Emergency Orders, Forcing WC Teakwood to Seek Emergency Injunctive Relief**

45.    Only days after WC Teakwood informed Bancorp that it believed that emergency orders related to COVID-19 prevented a public non-judicial foreclosure sale from being conducted in accordance with statute, on August 24, 2020, Bancorp informed WC Teakwood that it had sold the Teakwood Loan to Anonymous Teakwood Lender.

46.    Not for one second did Anonymous Teakwood Lender have any interest in being a lender to WC Teakwood; rather, it purchased the Teakwood Loan fully intending to proceed with a non-judicial foreclosure sale previously scheduled on September 1, 2020, ten days after Anonymous Teakwood Lender acquired the Teakwood Loan.

47.    On August 25, 2020, WC Teakwood received correspondence from Bracewell indicating that the September 1, 2020 sales would go forward as scheduled.

48.    WC Teakwood objected to proceeding with the sale, noting that Governor Abbot had issued Executive Order GA-28 prohibiting gatherings in excess of 10 people absent approval from the Mayor of the city where the gathering is scheduled to take place.[12]  It is undisputed that Anonymous Teakwood Lender had not obtained Mayor Adler's approval to hold a public foreclosure sale in Austin on September 1, 2020.

49.    Anonymous Teakwood Lender nevertheless insisted that the sales go forward.

50.    WC Teakwood therefore had no choice but to commence the Teakwood State Court Action on August 31, 2020 and file an emergency application seeking a temporary restraining

---

[12]    *See* Executive Order GA-28, available at: https://gov.texas.gov/uploads/files/press/EO-GA-28_targeted_response_to_reopening_COVID-19.pdf (last visited Nov. 23, 2020).

order to enjoin Anonymous Teakwood Lender from proceeding with the illegal foreclosure sales.

51.     On August 31, 2020, the District Court issued Orders in the Teakwood State Court Action granting WC Teakwood's application for a temporary restraining orders in its entirety.  *See* Adv. Pro. Dkt. No. 1, pp. 92-96.

**B.     The Hardeman Family Defendants Instruct Their Real Estate Broker to Market the 4811 Property for Sale, Resulting in the Widespread Dissemination of False and Misleading Marketing Materials**

52.     On or about September 8, 2020, the WC Debtors learned that NewQuest Properties ("NewQuest"), a commercial brokerage firm, was marketing the 4811 Property without WC 4811's authorization or consent.  Among other evidence, the WC Debtors obtained a copy of an email marketing blast sent by NewQuest to a large number of real estate owners and investors and other real estate brokers (the "NewQuest False Marketing Blast").

53.      WC Debtor was shocked by the NewQuest False Marketing Blast as it had never communicated with NewQuest regarding the 4811 Property let alone authorized it to market the property for sale to the public.

54.     Incredibly, the NewQuest False Marketing Blast incorrectly identified Hardeman as the owner of the 4811 Property.  The NewQuest False Marketing Blast caused significant confusion in the marketplace, prompting a number of recipients to reply inquiring as to the status and ownership of the 4811 Property.

55.     During the 4811 State Court Action, NewQuest advised counsel to WC 4811 that Hardeman had instructed real estate broker Jack Weiss to market the 4811 Property for sale and that NewQuest had circulated the NewQuest False Marketing Blast at Mr. Weiss's direction.

56.     Accordingly, WC 4811 served Hardeman with a subpoena in the 4811 State Court Action demanding that he appear for deposition and produce documents relating to the 4811

Property. Hardeman's counsel initially objected to the time and place of the deposition but ultimately agreed to produce Hardeman for a deposition on Monday, October 12, 2020.

57. On Friday, October 9, 2020, Anonymous 4811 Lender removed the 4811 State Court Action to this Court. On October 10, 2020, Hardeman's counsel informed counsel to WC 4811 that, based on the removal of the 4811 State Court Action, Hardeman did not intend to comply with WC 4811's subpoena and would not appear for a deposition on October 12, 2020 in accordance with the agreement between counsel. WC 4811 was therefore forced to file an Emergency Motion for Status Conference, asking the Court to compel Hardeman to appear for the deposition. *See* Adv. Pro. No. 20-1060-tmd, Dkt. No. 2.

58. Although one would expect a lender to share WC 4811's concern over a purportedly unauthorized third-party's widespread communication of misinformation concerning the ownership and status of its collateral, Anonymous 4811 Lender objected to WC 4811's efforts to enforce its subpoena on the basis that WC 4811 purportedly had failed to show that Hardeman's deposition was "relevant to any party's claim or defense" or that it was "proportional to the needs of the case." *See* Adv. Pro. No. 20-1060-tmd, Dkt. No. 2.

59. At a status conference on October 13, 2020, the Court dismissed Anonymous 4811 Lender's objection to Hardeman's deposition:

> And then I saw Exhibit A and I wasn't very happy with Exhibit A. This lender has made some pretty serious accusations about Mr. Paul. I don't see how you have any standing to say those things when Exhibit A happened. And to say, oops, well we sent an email and we said it was a mistake and we're real sorry, well that doesn't cut it. That's terrible. And Mr. Dodson, your client is on notice. If anything like Exhibit A happens again, there will be sanctions in an amount that I deem the minimal amount necessary to make sure it doesn't happen a third time.[13].... It seems to me that a targeted and limited Rule 2004 Exam would be the more appropriate way to get to the bottom of why Exhibit A ever happened.[14]

---

[13] *See* Adv. Pro. Dkt. 11, at 2:7-20.

[14] *Id.*, at 3:8-11.

60.      In response to Anonymous 4811 Lender's counsel's continued objection to WC 4811's efforts to investigate the circumstances of the widespread unauthorized circulation of the NewQuest False Marketing Blast, the Court observed "I mean, somebody running around spoiling the market for the assets before you've even gotten your feet on the ground in the bankruptcy case, that's a pretty serious matter. That goes to the bankruptcy estate and I think that a 2004 Exam is perfectly appropriate to get to the bottom of it."[15]   Accordingly, the Court ordered Hardeman to appear for a Rule 2004 examination.

61.      At his Rule 2004 examination, Hardeman acknowledged that he had spoken to Jack Weiss regarding his acquisition of the 4811 Loan and instructed him to gauge the market for the 4811 Property:

> Q.· ·So when 4811 SOCO, LP, bought the loan, did you tell Jack Weiss that you had bought the loan on 4811?
> A.· ·Yes.
>                              *        *        *
> Q.· ·Okay.· So did you tell Jack Weiss that you owned the note?
> A.· ·I did.
> Q.· ·And did you tell him to try to see what the market would pay for such a property? ·
> A.· ·Well, that was the gist of it, of just asking him to do a little drive-by and give me his opinion.[16]

62.      Notably, while Bracewell repeatedly stated on the record that he does not represent Hardeman, the overwhelming majority of the improper objections to counsel's questions came from Bracewell and not Hardeman's counsel.[17]  Further, Bracewell purported to assert attorney-

---

[15]      *Id.*, at 5:9-13.

[16]      *See In re: WC 4811 South Congress, LLC*, Case No. 20-11105-tmd, Dkt. No. 17-7, 25:18-20, 26:3-9.

[17]      *Id.*, at 30:6-8; 43:20-23; *see also* 12:24, 25:4, 30:6-8, 30:25-31:8, 31:24, 33:22-23, 36:16, 38:1-3, 39:2-7, 39:14-17, 42:20-22, 43:12-15, 45:4-17, 46:25-47:1, 49:24-50:1, 50:8-12, 58:23-59:1, 61:4-8, 65:16-17,66:3-22.

client privilege[18] on behalf of Hardeman and instructed him not to answer a number of questions.[19]

**C.    The Hardeman Co-Conspirators Conspire to Secure
        an Unfair Advantage in the Bankruptcy Proceedings**

63.    Shortly after the WC Debtors' Chapter 11 filings, the Hardeman Co-Conspirators began aggressively projecting to the marketplace that their acquisition of the Targeted Properties is a foregone conclusion. Specifically, the Hardeman Co-Conspirators have informed the WC Debtors' lenders,  joint venture partners and other business associates that, "within the coming weeks," they intend to file a motion to consolidate the WC Debtors' Bankruptcy Cases and simultaneously seek the appointment of a single receiver/trustee – Gregory Milligan ("Milligan") – to assume control over the finances and affairs of all four properties and/or debtors.

64.    According to the Hardeman Co-Conspirators, Milligan is aware of Hardeman's intentions and once he is appointed, has agreed to facilitate the sale of the Targeted Properties to the Anonymous Lender Defendants through his receivership appointment.

65.    Upon learning of the Hardeman Co-Conspirators' scheme, Mr. Paul filed a confidential "Request to Investigate" with the Travis County District Attorney's Office detailing the parties' roles in the conspiracy to defraud the WC Debtors of their equity in the Targeted Properties.  According to the District Attorney's Office, the Request to Investigate was referred the Office of the Attorney General for further investigation.

66.    On October 27, 2020, counsel to the WC Debtors received an email from the Court, indicating that it had received an *ex parte* communication "from a party in some of the Nate Paul cases," and that the Court was making it available to all other parties.  To the WC Debtors' surprise, a copy of Mr. Paul's confidential Request to Investigate was attached to the email.  To the WC

---

18      *Id.*, at 33:1-7, 40:16-17, 56:22-25, 62:25:63-4.

19      Id., at 38:1-3, 39:2-5, 43:3-6, 43:20-23.

Debtors' further surprise, approximately 40 attorneys that have appeared as counsel of record for any party in any proceeding pending before this Court were copied on the email, including cases unrelated to the WC Debtors or the Targeted Properties.

67.     Notably this improper *ex parte* communication to the Court was sent by Rhonda Mates, who is current counsel of record to Milligan state court proceedings of affiliates of the WC Non-Debtors.

68.     Upon information and belief, following Ms. Mates' *ex parte* communication, the Request to Investigate was leaked to the press and was picked up by multiple news publications statewide.[20]

69.     On recorded call on October 29, 2020, two days after Ms. Mates' improper *ex parte* communication, Hardeman reached out to Alan Nalle, the principal of a lender to an unrelated affiliate of the WC Debtors. As recounted in this call with Alan Nalle, Hardeman affirms his scheme for the Anonymous Lenders:

> Nalle:       But you did tell me, when we talked the second time, you did tell me that your Houston lawyers had some mechanism whereby they were gonna get the receiver for the bankrupt properties, the, the, Mitte receiver, appointed to be the receiver for the bankrupt properties.
>
> Hardeman:   The bankruptcy judge…and I can't even think of his name right off…he appoints the receiver, and from my understanding, it is this guy Milligan, and he's from Austin. Where the bankruptcy judge, at least temporarily right now, is living in Houston because his wife is in some kind of treatment down there.  But I can tell you, he has had it with Nate, he sees through all this shit about these bankruptcies just kicking the can down the road, putting it off.
>
> Nalle:       Let me ask you this, is the bankruptcy judge going to appoint Milligan to be the receiver for all of these bankrupt properties?
>
> Hardeman:   That's what I understand.  And he's going to consolidate them into

---

[20]     *See, e.g.*,  https://www.dallasnews.com/news/politics/2020/10/28/developer-linked-to-texas-ag-ken-paxton-says-loan-holders-judge-conspired-to-steal-his-properties/ (last visited Nov. 21, 2020).

one case.

70.     It therefore appears that the Hardeman Co-Conspirators are projecting to the marketplace that not only is this Court aware of the conspiracy, but it has agreed to play a critical role in the scheme to deprive the WC Debtors of their substantial equity in the Targeted Properties. Specifically, the Hardeman Co-Conspirators assert that this Court is aware of Anonymous Lender Defendants' forthcoming consolidation motion and has agreed in advance that it will be granted.

**D.     The Hardeman Co-Conspirators Ongoing Campaign to Disparage the WC Debtors in the Marketplace to Chill Competing Offers for the Targeted Properties**

71.     To chill the market for the Targeted Properties, Hardeman, Bayne, Riley and the Anonymous Lenders have continued to disparage the WC Debtors, their principals and affiliates to the marketplace.

72.     For example, on September 17, 2020 call, real estate broker Dani Tristan ("Tristan") inquired if Hardeman was interested in making an offer on the Teakwood Property. Rather than correcting Tristan and informing him that Anonymous Teakwood Lender had in fact acquired the Teakwood Loan nearly a month earlier, on August 21, 2020, Hardeman disparaged Mr. Paul to discourage Mr. Tristan from working on selling the property for a substantial amount more than the loan amount::

| | |
|---|---|
| Hardeman: | I can't say too much, but let me tell you this: Nate is in a world of hurt . . . The bankruptcy judge threw all of his bankruptcies out just this week and remanded them back to the bankruptcy receiver, who is here in Austin. And he's going to let all of the foreclosures go forward.  And that note on Teakwood is way past due. |
| Tristan: | Okay.  Yeah I remember I thought it was tied to a bunch of other properties, remember? I thought it was like 60-70 million bucks or something, I can't remember. |
| Hardeman: | I don't know about any numbers but good god is he ever in deep shit.  The foreclosure on 3rd and Congress is going to get to go |

> forward, the foreclosure on 99 Trinity there on First Street, that's going to go forward. This whole thing, this bankruptcy judge said 'Nate, you've made every excuse in the world, you've missed every deadline, I'm fed up with it, it's over,' and tossed it out and said the receiver can now move forward on all these things.

73.     This representation is littered with false and intentionally misleading statements. Hardeman intentionally conflated the WC Debtors Bankruptcy Cases, which remain pending, with Chapter 11 bankruptcy proceedings that were concluded and have no connection to the WC Debtors or the Targeted Properties, and certainly not to WC Teakwood.

74.     Upon information and belief, in conflating the WC Debtors' Bankruptcy Cases with concluded proceedings relating to separate properties, Hardeman intended to mislead Tristan to concluding that Targeted Properties had already been sold or would imminently be sold in non-judicial foreclosure proceedings, rather than otherwise being available for purchase in open and transparent sales processes..

75.     Upon information and belief, Hardeman's false and misleading statements to Tristan are but one example of the Hardeman Co-Conspirators' widespread disparagement of the WC Debtors or their representatives to market participants.

76.     Rather, Hardeman's disparaging statement was part of the Hardeman Co-Conspirators' concerned efforts to tarnish the WC Debtors' standing and damage their business relationships for the purposes of depriving the WC Debtors of opportunities to secure alternative financing; deterring real estate owners, developers and investors from making competing offers for the Targeted Properties; and to secure an unfair advantage for the Anonymous Lender Defendants in the WC Debtors' Bankruptcy Cases and otherwise intentionally frustrate their ability to reorganize.

## AS AND FOR A FIRST CLAIM
### (Civil Conspiracy)

5565876.3

77.     WC Teakwood repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     A civil conspiracy exists between two or more of the Hardeman Family Defendants, Anonymous Teakwood Lender, Bayne and/or Riley to: (a) unlawfully obtain an unfair advantage in the Teakwood bankruptcy proceedings; (b) unlawfully interfere with WC Teakwood's efforts to obtain alternative financing, to reorganize in the bankruptcy, or to pursue a sale of the Teakwood Property on market terms; and (c) disparaging WC Teakwood to Bancorp, falsely claiming that it was on the verge of financial ruin and thereby creating confusion, antagonism between WC Teakwood and Bancorp to induce Bancorp to sell the Teakwood Loan.

79.     There was a meeting of the minds among the Hardeman Family Defendants, Anonymous Teakwood Lender, Bayne and/or Riley as to all aspects of their conspiracy.

80.     The Hardeman Family Defendants, Anonymous Teakwood Lender, Bayne and/or Riley have engaged in one or more unlawful acts in furtherance of their conspiracy including, without limitation: (a) publicizing a false narrative to Bancorp that WC Teakwood, its principal and affiliates were on the verge of financial ruin to induce it to sell the Teakwood Loan to Anonymous Teakwood Lender; (b) conspiring to proceed with a non-judicial foreclosure sale of the Teakwood Property in violation of government emergency order, including Executive Order GA-28; (c) projecting to the marketplace that the Teakwood Property will be sold in a rigged foreclosure or bankruptcy auction process favoring Anonymous Teakwood Lender; and (d) publicizing to the marketplace that the Court is aware of and on board with the Hardeman Family Defendants, Anonymous Teakwood Lender, Bayne and/or Riley's conspiracy.

81.     By virtue of the Hardeman Family Defendants, Anonymous Teakwood Lender, Bayne and/or Riley's participation in a civil conspiracy, each of them is jointly and severally liable

for all acts taken by any of them in furtherance of the conspiracy.

82.     WC Teakwood has sustained damages proximately resulting from the unlawful acts of the Hardeman Family Defendants, Anonymous Teakwood Lender, Bayne and/or Riley in amount to be determined at trial.

## AS AND FOR A SECOND CLAIM
### (Tortious Interference with Prospective Contractual Relations)

83.     The WC Debtors repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

84.     WC Teakwood and Bancorp were engaged in good faith negotiations toward a modification of the Teakwood Loan Agreement immediately before to Hardeman, Riley and/or Bayne approached Bancorp concerning a potential sale of the Teakwood Loan.

85.     There was a reasonable probability that WC Teakwood and Bancorp would have entered into a modification of the Teakwood Loan Agreement but for Hardeman, Riley and/or Bayne's interference in WC Teakwood's lending relationship with Bancorp.

86.     Hardeman, Bayne and/or Riley intentionally and maliciously intervened in WC Teakwood and Bancorp's prospective contractual relations.

87.     Hardeman, Riley and/or Anonymous Teakwood Lender have engaged in independently tortious or unlawful acts with the conscious desire to prevent WC Teakwood and Bancorp from entering into a contractual loan modification, including disparaging WC Teakwood to Bancorp

88.     In interfering with WC Teakwood's lending relationship with Bancorp, Hardeman, Bayne and/or Riley acted with the knowledge that their interference was certain or substantially likely to prevent WC Teakwood and Bancorp from entering into a modification of the Teakwood Loan..

89.     No privilege or justification existed for Hardeman, Bayne and/or Riley's disparagement of WC Teakwood or their interference in WC Teakwood's negotiations with Bancorp concerning a potential modification of the Teakwood Loan.

90.     As a result of Hardeman, Riley and/or Anonymous Lender Defendants' interference with WC Teakwood and Bancorp's loan modification negotiations, WC Teakwood has sustained damages in an amount to be proven at trial.

## AS AND FOR A THIRD CLAIM
### (Business Disparagement/Defamation *Per Se*)

91.     WC Teakwood repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92.     Hardeman, Bayne, Riley and/or Anonymous Teakwood Lender have widely disseminated false, materially misleading and disparaging statements concerning WC Teakwood, its principal and affiliates to the marketplace including: (a) in an effort to induce Bancorp to sell the Teakwood Loan, Hardeman, Bayne and/or Riley represented that WC Teakwood was on the brink of financial ruin and that absent a sale of the Teakwood Loan, Bancorp was exposing itself to imminent risk of loss; (b) to secure an unfair advantage in the Teakwood bankruptcy proceeding, Hardeman, Bayne, Riley and/or Anonymous Teakwood Lender has widely publicized to the marketplace that the Teakwood Property will be sold in a corrupt bankruptcy auction process that is hopelessly rigged in favor of Anonymous Teakwood Lender; and (d) that the Court is aware of and on board with Hardeman, Bayne and Riley's scheme and intends to allow the process to go forward.

93.     Hardeman, Bayne, Riley and/or Anonymous Teakwood Lender intentionally and maliciously published such false and misleading statements for the purpose of harming WC Teakwood, its principal and affiliates to intentionally interfere with their business and business

24

relationships without privilege or justification.

94.     Hardeman, Bayne, Riley and/or Anonymous Teakwood Lender's disparaging statements were peculiarly harmful to the WC Debtors in that they suggest that the WC Debtors or their principal has engaged in unlawful or criminal conduct.

95.     Such statements are defamatory *per se* and are therefore actionable.

## AS AND FOR A FOURTH CLAIM
### (Equitable Subordination Pursuant to 11 U.S.C. § 510(c))

96.     WC Teakwood repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

97.     As detailed above, the Hardeman Family Defendants, Anonymous Teakwood Lender, Bayne and/or Riley have engaged and continue to engage in grossly inequitable conduct by, among other misconduct: (a) falsely claiming that WC Teakwood was on the brink of financial devastation in order to pressure Bancorp to sell the Teakwood Loan; (b) falsely projecting to the marketplace that the Teakwood Property will be sold in a corrupt bankruptcy auction process; and (c) widely publicizing to the  marketplace that the Court is aware of Hardeman, Bayne, Riley and/or Anonymous Teakwood Lender's scheme to defraud WC Teakwood of its substantial equity in the Teakwood Property; (d) interfering with the WC Teakwood's exclusive right to control the day-to-day operations of the Teakwood Property, causing confusion, resentment and mistrust between WC Teakwood, on the one hand, the Teakwood Property tenants and property-level vendors, on the other; and (e) disparaging the WC Debtors and their principal to the WC Debtors' current and prospective lenders, investors and joint venture partners, claiming that  and conspiring to obtain an unfair advantage in the WC Bankruptcy Cases.

98.     The Anonymous Lender Defendants' inequitable conduct has caused injury to the WC Debtors, their Estates and the WC Debtors' other creditors and has conferred an unfair

advantage on the Anonymous Lender Defendants.

99.     Equitable subordination of any claim that has been or will be filed by the Anonymous Lender Defendants is not inconsistent with the provisions of the Bankruptcy Code.

100.     As a result of Anonymous Lender Defendants' inequitable conduct, any and all proofs of claims filed by the Anonymous Lender Defendants should be equitably subordinated pursuant to 11 U.S.C. § 510(c).

**WHEREFORE**, WC Plaintiffs respectfully request that the Court enter Judgment:

(a) On the WC Debtors' First Claim for Civil Conspiracy, money damages in an amount to be proven at trial;

(b) On WC Teakwood's Second Claim for Tortious Interference with Prospective Contractual Relations, money damages in an amount to be proven at trial;

(c) On WC Teakwood's Third Claim for Business Disparagement/Defamation *Per Se*, money damages in an amount to be proven at trial;

(d) On WC Teakwood's Fourth Claim for Equitable Subordination pursuant to 11 U.S.C. § 510(c), equitably subordinating any claims filed by or to be filed by Anonymous Teakwood Lender.

(e) Granting WC Teakwood an award of its costs and expenses incurred in commencing and prosecuting this action, including reasonable attorneys' fees; and

(f) Granting WC Teakwood such other and further relief as the Court deems just and proper.

5565876.3

DATED: November 23, 2020

Respectfully submitted,

**FISHMAN JACKSON RONQUILLO PLLC**

  /s/ Mark H. Ralston
Mark H. Ralston
State Bar No. 16489460
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
Telephone: (972) 419-5544
Facsimile: (972) 4419-5500
E-mail: mralston@fjrpllc.com

PROPOSED COUNSEL FOR DEBTOR
4811 SOUTH CONGRESS, LLC